# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 22, 2015

**BY HAND**

G. Robert Gage, Jr., Esq.
Gage, Spencer & Fleming, LLP
410 Park Avenue
New York, NY 10022

Christopher Paul Conniff, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036

    Re:  *United States* v. *Dean Skelos & Adam Skelos*, 15 cr. 317 (KMW)

Dear Messrs. Gage and Conniff:

    This letter provides discovery pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P.").

    Enclosed please find five DVD discs containing the additional discovery materials identified and described in the attached index.

    With respect to the emails of Adam Skelos and Dean Skelos, which are bates-stamped USAO_007785 through USAO_007786, the emails were reviewed by the Government for pertinence and potential privilege. The Government categorized the emails it has reviewed into pertinence folders based on the Government's current view of pertinence without prejudice to revising its pertinence categorization in the future. The Government also segregated any potentially privileged emails into separate folders, which the Government has not reviewed to date. Other than for emails between your firms and the defendants, which will not be reviewed by the Government at all, the Government intends to have a "wall" AUSA review the other emails flagged as potentially privileged to determine whether attorney-client privilege actually applies to some or all of these emails.

    We also note with respect to ▒▒▒▒ emails, in addition to the "▒▒▒▒" account that was searched by the Government pursuant to search warrants, ▒▒▒▒ maintained an "▒▒▒▒" email account, which the Government has not searched and does not have possession of. We understand that prior to recently resigning from ▒▒▒▒ and ▒▒▒▒ (a subsidiary of ▒▒▒▒ ▒▒▒▒ attorneys hired a third-party electronic forensic company to make a complete forensic image of the ▒▒▒▒ server (the "Original ▒▒▒▒ Image"), which has now been provided to ▒▒▒▒ lawyers. We understand that the third-party

electronic company hired by ▇ lawyers continues to maintain the Original ▇ Image. We further understand that ▇ lawyers are reviewing the ▇ server for responsive materials, except for communications between ▇ and his attorneys and with the FBI.[1] The Government will review its copies of ▇ emails with the FBI and produce any that have not already been provided to you as appropriate. If we receive additional documents from ▇ we will provide them to you promptly.

In addition to the Rule 16(a) discovery we have provided to you (and will continue to provide promptly as new documents are provided to us from third parties), we are providing you with the following information with respect to witness statements relevant to the allegations in the Indictment in order to assist in your trial preparation. The statements of potential witnesses, as memorialized in law enforcement notes/reports or in grand jury testimony, will of course themselves be disclosed at the appropriate time consistent with the Government's discovery obligations.[2]

## I.   The Nassau County Contract Award

As described more fully in the Complaint filed on May 4, 2015, the Indictment alleges that Dean Skelos facilitated the award of the Nassau County contract to ▇ including but not limited to by consulting with CW-1 about obtaining State-funded contracts, monitoring the progress of Nassau County's Request for Proposal ("RFP"), and helping to secure early confirmation that the Nassau Interim Finance Authority ("NIFA") intended to approve the contract with ▇ as sought by CW-1. The Indictment also alleges that Dean Skelos assisted ▇ in obtaining additional funds and payments once the Nassau County RFP and contract were awarded to ▇ The Government does not at present intend to offer evidence or otherwise argue that there was "bid-rigging" or other illegality with respect to awarding the contract to ▇ and interviews conducted by the Government, including with ▇ ▇ (Nassau County), ▇ (Nassau County), ▇ (Nassau County Department of Public Works ("DPW")), ▇ (DPW), ▇ (NIFA), and ▇ , do not establish the existence of any unlawful conduct in the bidding process. ▇ and ▇ also stated, in sum and substance and in part, that NIFA has also provided pre-approval guidance that contracts were likely to be approved by NIFA in other cases. ▇ ▇ identified in the Complaint, denied recalling any conversations with Dean Skelos about ▇ or Adam Skelos.

---

[1]   White initially removed his communications with his attorneys and the FBI from the ▇ server. After ▇ lawyers agreed not to review those communications without first notifying ▇ attorneys, ▇ lawyers both provided ▇ with the Original ▇ Image and restored the communications to the ▇ server.

[2]   All of the witnesses cited below are represented by counsel. If you wish to obtain the contact information for any of the witnesses' attorneys please let us know and we will provide it to you.

2

## II.     Design-Build/P3 Legislation & State Storwater Funding

The Indictment alleges, among other things, that as part of the charged scheme, Adam Skelos represented to ▓ that his father, Dean Skelos, would promote the passage of design-build/P3 legislation in the State Senate that would permit Nassau County to implement fully the Nassau County contract with ▓ and would promote state funding of stormwater projects. The Government expects to offer evidence at trial that while Dean Skelos was broadly supportive of these goals, he took only limited steps to affirmatively promote such legislation and spending in the 2015 budget negotiations, particularly following the arrest of Assembly Majority Leader Sheldon Silver and press reports that Dean Skelos was under federal investigation.[3] In connection with these allegations, the Government interviewed several individuals, including ▓, ▓, ▓, and ▓, ▓, and ▓, who stated in sum and substance and in part that, to the best of their recollection: (1) they are not aware of any steps taken by Dean Skelos to seek design-build/P3 authorization during the budget process or to extend the Governor's proposed P3 legislation to municipalities; (2) Dean Skelos did not spearhead any effort to create a clean water infrastructure fund or otherwise to allocate budget funds specifically for stormwater or water infrastructure in the budget;[4] and (3) public officials other than Dean Skelos were requesting that budget funds be allocated to water infrastructure projects across the State. ▓ stated, in sum and substance and in part, that requests from several Senators regarding the inclusion of water and sewer infrastructure projects in the budget led to the request that ▓ include such a proposal in his Republican response to the Governor's State of the State. In addition, ▓ and ▓ stated in sum and substance and in part, that Dean Skelos stated in March 2015 that he was opposed to Nassau County's design-build proposal because Nassau County would not recognize sufficient financial benefits from the legislation.

## III.    State Lobbying by Adam Skelos

The Indictment alleges that Adam Skelos participated, often covertly, in lobbying Dean Skelos and other lawmakers on behalf of ▓. The Government has interviewed individuals, including ▓ and ▓, who stated, in sum and substance and in part, that Dean Skelos stated that Adam Skelos should not be lobbying at the State level.

---

[3]    Notwithstanding the above, the Government intends to offer evidence and argument that, as part of the scheme, Adam Skelos – with the understanding of Dean Skelos – at times exaggerated and/or misrepresented support Dean Skelos was providing or would provide for ▓ agenda in order to secure continued payments by ▓.

[4]    We note that the Senate Finance Committee Staff Report on the Adopted Budget, which was produced to you at USAO_333025-333093, states that the Water Infrastructure Improvement Act directs that grants "be used for the replacement and repair of existing wastewater infrastructure and drinking water infrastructure, but not storm water infrastructure."

### IV. Title Commissions for Adam Skelos

The Government alleges, among other things, that Dean Skelos used the power of his office to obtain business and money, including title commissions, for Adam Skelos. In an interview, ▮▮▮▮ (the President of "Developer-2" identified in the Complaint) stated in sum and substance and in part, that, after he had a meeting with Adam Skelos and Dean Skelos, ▮▮ referred title work to Adam Skelos because Adam Skelos was Dean Skelos's son and ▮▮ wanted to have a better relationship with politicians like Dean Skelos, although ▮▮ denied that he gave Adam Skelos the title work because of specific legislation that was pending before Dean Skelos.

Very truly yours,

PREET BHARARA
United States Attorney

By: ____/s/_____
Rahul Mukhi/Jason Masimore/Tatiana Martins
Assistant United States Attorneys
Southern District of New York
Tel: (212) 637-1581/2580/2215/2268

Enclosures