

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

October 27, 2015

Christopher P. Conniff
T +1 212 596 9036
F +1 646 728 2922
christopher.conniff@ropesgray.com

**VIA ECF & EMAIL**

The Honorable Kimba M. Wood
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *United States. v. Skelos, et al.*, S1 15 Cr. 317 (KMW) – Access to Exhibits

Dear Judge Wood:

    We represent defendant Adam Skelos in the above-referenced matter. Along with counsel for Dean Skelos, G. Robert Gage, Jr., we respectfully submit this letter in opposition to the request by non-party The New York Times ("The Times") for the unsealing of two exhibits submitted with defendants' Motion to Suppress (the "NYT Letter").[1] In particular, this letter provides the Court with information requested by your Honor during our October 22, 2015 telephone conference: 1) the publicly available information about the government's investigation into Senator Skelos and Adam Skelos; and 2) the specific, non-public portions of the sealed documents that defendants believe would prejudice them if unsealed less than three weeks before trial.

**I. The Extensive Public Information in this Matter Provides Sufficient Insight into the Government's Investigation and the Relevant Judicial Determination**

    The Times asserts in its initial letter application that "it is hard to imagine a case in which the public interest in disclosure is stronger." NYT Letter at 3. While The Times may believe this to be true, it is even more difficult to imagine a scenario in which the public has had greater access to the judicial proceedings, including the issues underlying defendants' Motion to Suppress. Indeed, the public received extensive information regarding the investigation and the allegations at issue as a result of the government's filing of its 43-page Complaint and 32-page

---

[1] As the Court knows, these exhibits are the Initial Title III Application for Adam Skelos's cellphone and the Final Report to Judge Gardephe on Senator Skelos's cellphone, dated February 27, 2015 (collectively referred to as the "Sealed Material").

Superseding Indictment. Both documents contain numerous references to specific telephone calls among the parties, *see, e.g.,* Compl. ¶ 27(d), 29(b), 36(f) and Superseding Indictment ¶ 20; calendar entries, *see, e.g.,* Compl. ¶ 19(c) and 29(a); email communications, *see, e.g., id.* ¶ 19(a)-(d), 20(b), 26(b)-(c), 27(b); and intercepted wiretap recordings, *see, e.g., id.* ¶ 17, 42(a), 51(a), 53(b). The Complaint also includes extended excerpts from many other email communications, *see, e.g., id.* ¶ 28, 31(b), and lengthy portions of consensual telephone recordings, *see, e.g., id.* ¶ 42(b), 45, 54(a).

The Complaint also reveals a great deal of information about the government's lengthy investigation into Senator Skelos and his son. As one example, the Complaint describes the cooperation efforts of two individuals and the initial dates of their cooperation, Compl. ¶ 20(b), 22, and notes that these two individuals "have entered into non-prosecution agreements with the Government." *Id.* at n.4. The Complaint further states that CW-2 worked proactively for the Government and consensually recorded telephone calls and in-person meetings. *Id.* at n.6 & ¶ 58. The Complaint and Superseding Indictment also identify specific individuals the government had spoken with as part of the investigation, as well the types of documents collected. *See, e.g., id.* ¶ 29(c) ("I know from interviews of two executives of Title Company-1 . . ."); *id.* ¶ 54 ("I know from interviews, including with CW-2 and Nassau County officials and New York State officials, and documents from those officials . . ."); *id.* ¶ 19(c) (referencing entries from Dean Skelos's Senate calendar); *id.* ¶ 24 ("I know from interviews of individuals, including CW-1 and a lobbyist for Developer-1 . . ."); *id.* at n.5 (noting conclusion based on review of financial records from Adam Skelos's employers); Superseding Indictment ¶ 24 (referencing records of Adam Skelos's attendance at work). As a result of the media's efforts, many of these witnesses and related companies have been identified publicly.

The public also has had access to the parameters of the government's investigation through a review of the defendants' pre-trial motions and the government's opposition brief. The Motion to Suppress provided an overview of the government's toll records analysis and identified several of the numbers dialed most frequently from the defendants' phones. Mem. of Law in Supp. of Defs.' Mot. to Suppress, Dkt. No. 24, at 8 (hereinafter, "Motion to Suppress"). In addition, the motion gave additional background on the actions taken by one of the government's cooperating witnesses. *Id.* at 12-13. The government's Opposition Brief provided yet further detail of the investigation. Mem. of Law in Opp'n to Defs.' Pretrial Mots., Dkt. No. 27, at 47, 50-51 (hereinafter, "Opposition Brief").

Finally, the Affidavit by Assistant United States Attorney Tatiana Martins submitted in connection with the government's Opposition Brief (the "Martins Affidavit"), which was unsealed by agreement of the parties, provided additional details of the government's investigation. *See* Exhibit A to Opposition Brief. The Martins Affidavit noted the issuance of more than 150 subpoenas to individuals and entities in connection with this matter as well as interviews with approximately 40 people. *Id.* ¶ 12. The Martins Affidavit also provided the dates when evidence and witnesses were presented to the grand jury and identified generally the subjects discussed during their testimony. *Id.* ¶¶ 8-11.

In regard to the specific issues arising out of the Motion to Suppress, which formed the purported basis for The Times application, the public knows a great deal already regarding the grounds for the defendants' motion. For instance, the government spent seven pages in its

Opposition Brief discussing the probable cause that formed the basis for the Initial Title III Application. *See* Opposition Brief, at 41-47. The Opposition Brief also recited a substantial portion of the Alternative Means section from the Initial Title III Application. *Id.* at 54-60. Among other things, the Opposition Brief revealed the rationale behind the authorizing agent's belief that the use of undercover officers was impractical, *id.* at 55; explained the various reasons why the agent deemed physical surveillance insufficient, *id.* at 55-56; justified the agent's determination that pen registers and telephone records were of only limited use, *id.* at 56; explained why the continued use of grand jury subpoenas was problematic and why records received pursuant to these subpoenas were limited in important ways, *id.* at 57; and noted the agent's belief that it would be problematic to approach witnesses in part because it might alert the defendants to the ongoing investigation, *id.* at 59.

In sum, the public record is replete with information relevant to this matter and, in particular, the defendants' Motion to Suppress. As such, there is no compelling need to unseal the small amount of additional information at this time.

## II. The Non-Public Sections of the Initial Title III Application and Final Letter (UNDER SEAL)[2]







██████████ (END OF SEALED PORTION)

The risk of publication of this information is high as evidenced by the series of articles that appeared immediately after the government filed its *in limine* motions, dated October 23, 2015, which sought the introduction of additional evidence challenged by the defense. Within hours of the filing, numerous articles appeared touting "new evidence" of defendants' wrongdoing. *See, e.g.,* Dareh Gregorian, "Former Senate Majority Leader Dean Skelos caught on wiretaps plotting to get son's wife on Nassau zoning board, feds say," *New York Daily News*, Oct. 23, 2015, http://www.nydailynews.com/new-york/wiretaps-zap-skelos-son-article-1.2409341. A short time later, The Times published an article with the headline, "Wiretaps Offer New Details in Corruption Case Against State Senator Skelos and His Son," *New York Times*, Oct. 23, 2015, http://www.nytimes.com/2015/10/24/nyregion/wiretaps-offer-new-details-in-corruption-case-against-state-senator-skelos-and-his-son.html?_r=0. Defendants are trying to avoid a similar fate here.

### III. Conclusion

For the reasons set forth herein, defendants respectfully request that the Court maintain under seal through the end of trial the portions of the Initial Title III Application and Final Report that have not already been publicly disclosed.

Respectfully submitted,

*[signature]*

Christopher P. Conniff

cc: All counsel of record (via ECF)
    David E. McCraw, Esq. (via electronic mail)

Enclosure